PER CURIAM.
In relevant part, article V, section 9 of the Florida Constitution provides:
If the supreme court finds that a need exists for increasing . . the number of judges ... it shall, prior to the next regular session of the legislature, certify to the legislature its findings and recommendations concerning such need.
For the reasons set forth below, this Court certifies a need for the following new judicial positions, effective August 1, 1980, for the continued, effective operation of the courts of this state.
DISTRICT- CIRCUIT COURT COURT COUNTY COURT
First Appellate District 2
Fourth Judicial Circuit 1
Seventh Judicial Circuit 1 1 (Volusia)
Ninth Judicial Circuit 1
Tenth Judicial Circuit 1
Fifteenth Judicial Circuit 1 (Palm Beach)
Seventeenth Judicial Circuit 3 2 (Broward)
Eighteenth Judicial Circuit 1 (Brevard)
Nineteenth Judicial Circuit .1
TOTALS 2 8 5
Five of the circuit court positions certified were identified in the Court’s 1979 certification as likely to be required this year, if projected population and caseload growth patterns continued. They did.
Requests were received from the appellate districts for five district court judge-ships, and from the judicial circuits for twenty-two circuit court and eight county court judgeships.' These requests were carefully analyzed by the state courts administrator, the chief justice, and the full Court, using essentially the process by which the Court determined the number of new judgeships to certify last year at this time. See In re Certificate of Judicial Manpower for Circuit and County Courts as Required by Section 9, Article V, Florida Constitution, 370 So.2d 363 (Fla.1979). It will be noted that the Court’s recommendation certifies to the legislature twenty less judicial positions than have been requested.
Although not all requests have been met, a phenomenon is discernible which will affect future judgeship certifications. There has been a steady growth in the number of case filings per judge at the circuit level, as the following figures demonstrate.
1973 — 980 cases per judge
1974 — 1,283 cases per judge
1975 — 1,325 cases per judge
1976 — 1,298 cases per judge
1977 — 1,445 cases per judge
1978 — 1,677 cases per judge
1979 — 1,827 cases per judge
While “filings per judge” is not, by itself, a meaningful statistic for certification, it does tend to indicate that the availability of judicial positions has not kept pace with the litigation explosion in Florida. It further suggests that changes in the duties and responsibilities of judicial officers which occur with major law reform efforts, such as recent criminal and juvenile law reforms, *1350 should be weighed for their impact on the judiciary.
Our recommendations for new circuit court positions are conservative, and they are predicated to some extent on the prospect of legislative action during the 1980 regular session (i) to repeal the 125-day limit on the use of retired judges, and (ii) to. increase the jurisdictional limit for civil proceedings in county courts. Should these measures fail, the number of judges now certified will be inadequate to maintain reasonably current dockets in several judicial circuits.
FINDINGS
First Appellate District. Effective October 1, 1979, the Industrial Relations Commission was abolished and all pending and future appeals from workmen’s (workers’) compensation cases were assigned to the First District Court of Appeal. The court was given two new judgeship positions to cope with this new responsibility, neither of which was filled until November 1979.
The caseload of this court has increased beyond all expectations, both in the area of workers’ compensation, and in all other categories. With respect to the former, the court received 1,105 unresolved cases from the IRC on October 1, 1979, and has received an average of seventy-eight additional compensation cases in each successive month. We note that, whatever diminution may occur in workers’ compensation appeals, additional duties will devolve on the court as a result of the adoption on March 11 of the jurisdictional amendment to the constitution.
Case filings in other areas, principal among which is administrative law, have steadily grown, to the point that the court is now receiving a projected annual average of 461 cases per judge, not including rehearing requests and motions. The court’s backlog of cases on December 31, 1979, was 2,162 cases. The chief judge, despite demanding administrative burdens, currently attempts to maintain a full calendar of cases.
We noted in our certification last year that appellate judges cannot adequately bear the initial responsibility for review of more than 250 cases per judge, annually. Even with the two new judgeships, the caseload per judge in this district will be well above acceptable levels. We hope that etired district court judges will be able to assist this court, and that adequate staffing is provided for their needs, until the trend of new filings is confirmed over a longer period of time,, at which time it may be necessary to add more permanent judge-ships.
Based on a need for the chief judge to assume full-time, or near full-time, administrative responsibilities, and in light of both the continued growth in the number and complexity of appeals in this appellate district and the additional writing responsibilities placed on district court judges by the March 11 amendment to the constitution, we certify the need for two additional district court judges.
Fourth Circuit. The dominant factors considered by the Court in certifying the need of one additional circuit judge in the Fourth Judicial Circuit (Duval, Clay and Nassau Counties), despite a request for two, are (i) the growth of litigation in the outlying areas of the circuit (Clay and Nassau Counties), (ii) the constitutional limitations on the assignment of additional duties for four, non-lawyer county court judges in the circuit, (iii) the lack of available, assignable retired circuit court judges, and (iv) an increase in felony filings which has required continued assignments of a county court judge to circuit court duties in that area.
Seventh Circuit. The dominant factors considered by the Court in certifying the need for one additional circuit judge and one additional county court judge in the Seventh Judicial Circuit (Volusia, Putnam, Flagler and St. Johns Counties), despite a request for two circuit court judges and one county court judge, are (i) the continuing caseload growth in Putnam and St. Johns Counties, (ii) the increase in criminal matters in Volusia County, and (iii) one of the highest caseload filing incidence in the state.
*1351 Ninth Circuit. The probable need for one additional circuit court judge here was perceived in 1979. The dominant factors considered by the Court in certifying the need for one additional circuit court judge in the Ninth Circuit (Orange and Osceola Counties) despite a request for two, are (i) the inability to service continually growing circuit court caseloads, and (ii) the unavailability of retired judges.
Tenth Circuit. The probable need for one additional circuit court judge here was perceived in 1979. The dominant factors considered by the Court in certifying the need for one additional circuit judge in the Tenth Judicial Circuit (Polk, Highlands and Har-dee Counties), despite a request for two judges, are (i) rapidly expanding caseloads and growing backlogs in the juvenile division, (ii) the unavailability of county court judges for temporary assignments to the circuit court, and (iii) the second highest caseload incidence in the state.
Fifteenth Circuit. The dominant factor considered by the Court in certifying the need for one additional county court judge in the Fifteenth Judicial Circuit (Palm Beach County) was an ever-growing population and county court caseload.
Seventeenth Circuit. The probable need for two additional circuit court judges here was perceived in 1979. The dominant factors considered by the Court in certifying the need for three additional circuit judges and two additional county court judges in the Seventeenth Judicial Circuit (Broward County), despite a request for eleven circuit court and three county court judgeships, are the same as last year, plus the special condemnation situation which exists in Bro-ward County.
This circuit has requested three of the eleven additional circuit judges predicated exclusively on projected judicial requirements for condemnation proceedings now commencing and projected to continue for six or seven years. We are unwilling to certify the need for permanent judgeship positions for a non-permanent need. Our recommendation for the creation of three permanent judgeships takes into account this special consideration, including the fact that condemnation proceedings will temporarily increase the caseload and jury trials in this circuit.
Growth in Broward County, which apparently is the second fastest growing county in the United States, is expected to continue, and the need for additional judicial manpower has been thoroughly documented. Retired judges cannot be made available to provide the necessary continuity of manpower which this circuit now needs. Accordingly, we certify the need for three new, permanent, circuit court judgeships at this time. In the event that condemnation matters become too burdensome or further growth in the county continues, the Court may well be required to certify the need in successive years for additional judgeships.
Eighteenth Circuit. The dominant factors considered by the Court in certifying the need for one additional county court judge in the Eighteenth Judicial Circuit (for Brevard County), despite a request for two, are (i) the extensive travel times required to service the wide geographical area covered by the circuit, and (ii) the explosion of population and caseloads in lower Brevard County.
Nineteenth Circuit. The probable need for one additional circuit court judge here was perceived in 1979. The dominant factors considered by the Court in certifying the need for one additional circuit court judge in the Nineteenth Judicial Circuit (St. Lucie, Martin, Okeechobee, and Indian River Counties), despite a request for two, are the same as last year, namely (i) travel times required to service the jurisdiction of the circuit, and (ii) an expansion in population, caseload, and complex litigation resulting from the permanent growth which has taken place in lower Martin County.
In addition to these identified peculiar circumstancés within these circuits, each judgeship request is statistically justified in that the ability of judicial officers in these circuits to perform thoroughly, expeditiously, and fairly their total judicial duties is to some degree presently impaired by the volume of matters now commanding their attention.
*1352 CERTIFICATION
Therefore, in accordance with article V, Section 9, Constitution of Florida, we certify the need for the additional district, circuit and county court judgeships indicated above, for a total of fifteen new judicial positions for the appellate and trial courts of the state. This Court certifies that these judicial officers are necessary, and we recommend that they be made permanent by law and funded by the state.
As a final point of consideration we note that 1980 is an election year, so that the possibility of either elective or appointive judgeship positions is present. If vacancies are to be filled by elections in the fall, none of the judicial manpower we have certified will be available until January, 1981, that is, one- full year from the time the needs of these courts were determined. We recommend, therefore, the creation of all judicial positions as of August 1, 1980 (following the close of the qualification period for elective state offices), and to avoid personal hardships and uncertainty for applicants we recommend that the seats created be removed from the elective process in 1980.
ENGLAND, C. J., and ADKINS, BOYD, OVERTON, SUNDBERG, ALDERMAN and McDONALD, JJ., concur.